LoRAYNE R. KASAI, APPELLEE, V. STEVE KASAI, APPELLANT.
71 N. W. 2d 105

Filed June 17, 1955. No. 33729.

*Grenville P. North* and *Lloyd W. Kelly*, for appellant.

*Harold A. Prince*, for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ., and KOKJER, District Judge.

KOKJER, District Judge.

The plaintiff, LoRayne R. Kasai, obtained a divorce from defendant Steve Kasai by a decree entered on March 11, 1954. On September 10, 1954, defendant filed a motion and application praying that the decree be set aside on the grounds that it had been obtained by fraud and perjured testimony. After a hearing thereon the district court entered an order overruling the motion. We affirm that order.

The second amended petition upon which the case was tried, in addition to other necessary allegations, described in detail acts of cruelty on the part of the defendant toward the plaintiff as grounds for divorce. All of the property standing in the names of the parties was specifically described. Plaintiff's claim that substantially all of this property had been inherited from her deceased former husband and that nothing had been added through defendant's endeavors or from his resources was clearly set out. The prayer was for an absolute divorce, for the return of her former name, and for an order quieting the title of all of the property described in her.

The defendant, after interposing some preliminary pleadings, filed an answer which put in issue the material allegations of the petition and a cross-petition the allegations in which were extremely uncomplimentary to plaintiff.

March 11, 1954, was the date set for trial. Defendant caused subpoenas to be served on six witnesses requiring them to be present for the purpose of giving testimony in his behalf. He appeared in the courtroom at the appointed time with his attorney. Plaintiff and her attorney and witnesses were there ready to proceed. At this juncture defendant asked if he could talk to his wife. It was arranged, and the two went alone into the jury room. In about 10 minutes they returned into the courtroom. Defendant stated he did not want to go on with the case. He requested his lawyer to withdraw. The answer was withdrawn and the cross-petition was dismissed by defendant. Plaintiff's lawyer moved that the cross-petition be expunged from the record and the motion was sustained. Defendant was found and adjudged to be in default and the trial proceeded. The transcript discloses that plaintiff's testimony was corroborated by various witnesses. A decree was signed and entered on the day of the trial, finding that the allegations in plaintiff's second amended petition were true and awarding her the relief prayed for. This included specifically and in detail an award of the property to her in strict accordance with her claims as set out in her petition.

As to the alleged fraud, defendant claimed that plaintiff, during their talk in the jury room, promised to pay him $10,000 within 6 months after the entry of the divorce decree, to pay the costs of the action and his attorney's fee, and that there would be no determination of the title to the real estate in the decree if he would withdraw from the case, giving as her reason that she would like to save her face as far as scandal was concerned. According to his claim he was to give

her a quitclaim deed to the property after payment of the $10,000 to him.

Plaintiff testified that defendant, in the jury room, said he still loved her, to which she replied that he did not act like it when he filed his cross-petition for all people to read "and talk about me and drag me in the mud." Also, that he asked to meet and talk with her over a cup of coffee that afternoon and wanted a chance to win her back. She stated that she agreed to meet him for the cup of coffee if her brother-in-law and sister-in-law were present, and made no promise as to a reconciliation but told him if he felt he could "hurdle that barrier" that he had put up between them, she would not stop him. She said there was no mention of money during this conversation, and denied that she had ever promised to pay him anything.

There is no corroboration whatever for defendant's story. All later circumstances tend to support the one told by plaintiff. For example, the decree entered on the very day of the alleged promise quieted title to all the property in plaintiff. This was contrary to what plaintiff had promised if defendant's story is true, yet he made no complaint, filed no motion for new trial, and took no action at all until almost 6 months later. Defendant's statement that plaintiff's reason for promising to pay him $10,000 to withdraw was her desire to avoid a scandal questions itself when it is remembered that he had already filed in the clerk's office, open to public inspection, his cross-petition containing all of the scandalous material that he relied upon and there was no way she could have been relieved of scandal. On the afternoon of the trial the parties had coffee together in the presence of the plaintiff's brother-in-law and sister-in-law, which was in accord with plaintiff's story. At this meeting no mention was made of any money due from plaintiff to defendant. Defendant wrote to plaintiff later and called her over long distance telephone but never asserted any claim for money due

him. He did ask her to send him $200 or $300 at one time, and she agreed to buy some tools which were his for $200. This money was sent by plaintiff's brother-in-law. Defendant was in Grand Island some time after the divorce decree was entered but at no time until the filing of the motion to set aside the decree did defendant assert any claim that plaintiff owed him $10,000 or any other amount.

The power to set aside or modify a decree of divorce under section 42-340, R. R. S. 1943, is not absolute but must be exercised within a sound legal discretion. Arent v. Arent, 159 Neb. 347, 66 N. W. 2d 813; Pittman v. Pittman, 148 Neb. 864, 29 N. W. 2d 790.

Where a default has been regularly entered, as it was in this case, it is largely within the discretion of the trial court to say whether the defendant shall be permitted to come in afterwards and make his defense and, unless an abuse of discretion is made to appear, this court will not interfere. Roberts v. Roberts, 157 Neb. 163, 59 N. W. 2d 175.

The trial court held against the contentions of the defendant. Certainly it cannot be said under the record in this case that the trial judge abused his discretion. The record preponderates in favor of the contrary view.

With reference to defendant's claim that the decree was obtained by false testimony, it need only be pointed out that the evidence given at the original trial is not contained in the record upon which this cause is submitted. This being true, the court cannot determine whether or not the decree rendered at the trial was the result of false testimony. Glissmann v. Grabow, 155 Neb. 690, 53 N. W. 2d 94. The presumption is that it was not.

The order of the district court is affirmed.

AFFIRMED.